IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WILSON NUNEZ and LUIS MEJIA, individually and on behalf of all persons similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 2:16-cv-03005-CJB-KWR |
| vs. | ) ) ) | JUDGE CARL J. BARBIER MAG. JUDGE KAREN WELLS ROBY |
| ORLEANS SHORING, LLC, et al. | ) ) | |
| Defendants. | ) ) ) | |

GENERAL RELEASE AND SETTLEMENT AGREEMENT

ARTICLE I.

Preamble/Recitals

This General Release and Settlement Agreement (the "Agreement") is entered into by Plaintiffs, Wilson Nunez, Luis Mejia, Jose Enrique Bautista, Eleuterio Loredo, Santos Martinez, Marco Mejia, Amadeo Polvorilla, and Luis Rodriquez, individually and on behalf of all other individuals who consent to participate in the above-captioned collective action case who have not previously settled their claims against Defendants ("Opt-in Plaintiffs"), on the one hand, and Orleans Shoring, LLC, Santicima Trinidad, LLC, La Divina Misericordia, LLC, Antonio Nunez and Antonio Nunez Reyes, together with their current and former partners, predecessors, successors, affiliates, assigns, subsidiaries, joint venturers, and any other related entities, including any officers, directors, employees, principals, members, insurers, fiduciaries, attorneys, and agents (collectively "Defendants"), on the other hand.

**WHEREAS**, Plaintiffs filed a collective action lawsuit against Defendants in the United States District Court for the Eastern District of Louisiana, captioned *Nunez v. Orleans Shoring, LLC et al.*, Civil Action No. 2-16-cv-03005 (the "Litigation") regarding Defendants' alleged failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA");

**WHEREAS**, Defendants vehemently deny that they have any liability for failure to pay overtime compensation and deny all allegations made in the Litigation. Specifically, Defendants deny Plaintiffs were employees of any Defendant and further deny any Plaintiff worked any overtime hours for which he or she was not adequately compensated, but have made a business decision to settle to avoid the cost of defense of this matter, and to avoid the uncertainties and expense of further protracted litigation;

**WHEREAS**, the Parties have conducted relevant discovery and investigated the facts relating to the claims alleged and have made a thorough study of the legal principles applicable to the FLSA claims asserted against Defendants.   Based upon Plaintiffs' counsel's investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the Parties' assessment of the uncertainties of litigation and the relative benefits conferred upon the Opt-in Plaintiffs pursuant to this Settlement Agreement, Plaintiffs' counsel has concluded that a settlement with Defendants on the terms set forth in this agreement is fair, reasonable, adequate and in the best interests of Plaintiffs;

**WHEREAS**, after extensive negotiations, the Parties desire to settle fully and finally any and all of Plaintiffs' claims against Defendants arising out of his or her compensation by any Defendant and represent and acknowledge that this Agreement represents a fair and reasonable resolution of a *bona fide* dispute;

**WHEREAS**, the Parties recognize that notice to potential Opt-in Plaintiffs of the material terms of this settlement, as well as Court approval of the settlement, are required to effectuate this Agreement, and that the Agreement will not become operative until the Court grants approval of this Agreement; and

**WHEREAS** the Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) with respect to the Opt-in Plaintiffs have been met.

**NOW, THEREFORE**, in consideration of the mutual promises contained herein, it is agreed by and between the undersigned, that the FLSA Collective Action shall be settled, subject to the approval of the Court, pursuant to the following terms and conditions:

## ARTICLE II.

### Purpose

Section 2.1:   The rights and obligations set forth in this Agreement are for the purpose of conclusively resolving and settling the claims for relief that were or could have been made by Plaintiffs in the Litigation.

## ARTICLE III.

### Definitions

Section 3.1:        As used in this Agreement, the following terms shall have the following meanings:

a) "Claim Form" means the form provided to potential Opt-in Plaintiffs, substantially in the form attached as Exhibit "A" to this Agreement, to submit in order to obtain a Settlement Award under this Agreement.

b) "Claims Released" means any and all past, present and/or future charges,

972771                                   Page **2** of **20**

complaints, claims, causes of action, debts, sums of money, controversies, agreements, promises, damages and liabilities of any kind or nature whatsoever, both at law and equity, known or unknown, suspected or unsuspected, including, without limitation, breach of contract, negligence, unpaid monies owed, claims for overtime wages, payment on open account, penalties, attorneys' fees under the FLSA or similar Louisiana law, retaliation, wrongful discharge, or expenses, that Plaintiffs have had, now have, and/or which may hereafter accrue or be acquired by Plaintiffs against Defendants, in any way arising out of or related to Plaintiffs' alleged employment with or services performed by Defendants and/or alleged transactions or occurrences which are or could have been the subject of the Litigation.

c) "Claims Submission Period" means the time period of sixty (60) days commencing on the date when the FLSA Notice and Claim Form are initially mailed to potential Opt-in Plaintiffs during which they may submit their executed Claim Form to receive a Settlement Award under this Agreement.

d) "Defendants" means Orleans Shoring, LLC, Santicima Trinidad, LLC, La Divina Misericordia, LLC, together with their current and former parents, predecessors, successors, affiliates, assigns, subsidiaries, joint venturers, and any other related entities, including its past and present officers, directors, employees, principals, members, privies, attorneys, affiliates, insurers, fiduciaries and agents, and Antonio Nunez and Antonio Nunez Reyes, together with any of their representatives, agents, attorneys, affiliates, employees, heirs, successors and/or assigns.

e) "Effective Date" means the date of approval of this Settlement Agreement by the Court.

f) "FLSA Notice" means the Notice of Settlement of Collective Action Lawsuit to be sent to the potential Opt-in Plaintiffs, substantially in the form attached as Exhibit "A" to this Agreement, subject to Court approval. The potential Opt-in Plaintiffs include "[a]ll individuals who worked or are working performing manual labor directly for Santicima Trinidad, LLC, La Divina Misericordia, LLC, Antonio Nunez, or Antonio Nunez Reyes during the previous three years, and who are eligible for overtime pay pursuant to the FLSA, 29 U.S.C. § 207 and who did not receive full overtime compensation." After a diligent and good faith search, Defendants have provided a list of all individuals who may fall within this definition, as well as their most recent contact information.

g) "Parties" means Plaintiffs and Defendants.

h) "Plaintiff" means any of the following persons: Wilson Nunez, Luis Mejia, Jose Enrique Bautista, Eleuterio Loredo, Santos Martinez, Marco Mejia, Amadeo Polvorilla, Luis Rodriquez or any of the Opt-In Plaintiffs.

i) "Plaintiffs" means Wilson Nunez, Luis Mejia, Jose Enrique Bautista, Eleuterio

Loredo, Santos Martinez, Marco Mejia, Amadeo Polvorilla, Luis Rodriquez, and Opt-In Plaintiffs.

j) "Opt-in Plaintiffs" mean all persons who have not previously settled their claims against the Defendants and who, after this Agreement is executed, opt into the settlement of this FLSA Collective Action pursuant to the Settlement Agreement by returning a fully executed, timely Claim Form submitted to Plaintiffs' Counsel. All Plaintiffs specifically named in subsections "I" and "J" above are not "Opt-in Plaintiffs."

k) "Agreement" means this General Release and Settlement Agreement and all attachments thereto.

l) "Settling Party" means any person who has previously settled his or her claims against Defendants that are the subject of this Litigation.

## ARTICLE IV.

Section 4.1:    The terms of this Agreement are the product of arms-length negotiations between the Parties and their counsel hereto, and the Parties stipulate that the consideration given to support the obligations of this Agreement is the full consideration agreed to, and that neither has received any other promises, inducements, or concessions in support of the duties imposed.

Section 4.2:    By entering into this Agreement, Plaintiffs stipulate and agree, among other things, Plaintiffs have resolved and settled any and all wage and hour related claims that were or could have been made to date against Defendants in any legal forum. The Parties further stipulate and agree that entry into this Agreement does not constitute, for any purpose whatsoever, either directly or indirectly, an admission of any violation of law or contract, or any other legal obligation whatsoever. The Parties further stipulate and hereby agree that this is a fair and reasonable resolution to this matter.

Section 4.3:    This Agreement is entered into by the Parties solely to avoid the expenses and uncertainties of litigation, and represents the compromise of disputed and contingent claims in a *bona fide* dispute over alleged unpaid overtime wages.

## ARTICLE V.

### Consideration

Section 5.1:   In exchange for the mutual promises exchanged herein, Defendants agree to pay Plaintiffs and Plaintiffs' counsel as follows:

| | | |
|---|---|---|
| 1. | Luis Mejia | $9,282.00 |
| 2. | Wilson Nunez | $4,854.00 |

| 3. | Jose Enrique Bautista | $7,600.13 |
|---|---|---|
| 5. | Eleuterio Loredo | $4,486.50 |
| 6. | Santos Martinez | $5,895.75 |
| 7. | Marco Mejia | $2,357.25 |
| 8. | Amadeo Polvorilla | $4,758.00 |
| 9. | Luis Rodriguez | $6,958.25 |
| 10. | Plaintiffs' attorneys' fees | $37,500.00 |
| 11. | Class Notice fees | $1,000.00 |
| 11. | Any payment required in accordance with Section 8 of this agreement. | |

Defendants shall be responsible for remitting checks payable to each Plaintiff and Plaintiffs' counsel in the amounts above. Plaintiffs' counsel shall be solely responsible for ensuring the payments are delivered to each Plaintiff. To the extent any potential Opt-in Plaintiff fails to submit a Claims Form within the Claims Submission Period, the amount of payment allocated to that individual shall be retained by Defendants. No Settling Party shall be entitled to receive any of the Settlement Funds, regardless of whether such Settling Party has previously opted into the Litigation or subsequently opts into the settlement.

Section 5.2:   Settlement awards shall be delivered to Plaintiffs' counsel for payment to Wilson Nunez, Luis Mejia, Jose Enrique Bautista, Eleuterio Loredo, Santos Martinez, Marco Mejia, Amadeo Polvorilla, and Luis Rodriguez within seven (7) days after the Court approves this settlement as provided in Section 8.

Plaintiffs' attorneys' fees and notice fees shall be delivered by Defendants to Plaintiff's counsel within fifteen (15) days after the Court approves this settlement as provided in Section 8.

All checks for settlement awards shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter be automatically canceled if not cashed by Plaintiff within that time, at which time the right to recover any settlement award will be deemed void and of no further force and effect.

If either the settlement awards or the attorneys' fees herein described are not delivered within the delays allowed by this section, the Plaintiffs and their attorneys shall be entitled to the reasonable costs and attorneys' fees of enforcing this agreement.

Section 5.3:   The consideration in Section 5.1 above shall satisfy, and is inclusive of, any and all claims for attorneys' fees, costs and expenses incurred by Plaintiffs in connection with the Litigation and securing the dismissal of the Litigation. Accordingly, Plaintiffs and/or Plaintiffs' counsel shall not seek, claim or be entitled to recover any additional consideration, attorneys' fees, costs or expenses from Defendants in the Litigation except in the specific contingency provided for in Section 5.2.

Section 5.4:    Plaintiffs acknowledge and agree Defendants made no representations regarding the tax consequences of any amounts received pursuant to this Agreement. Plaintiffs agree to pay federal and state taxes, if any, which are required by law to be paid with respect to this settlement.  No person shall have any claim against Defendants based on distributions or payments made in accordance with this Agreement.

Section 5.5:    It is stipulated and agreed this consideration satisfies any and all claims of Plaintiffs under the FLSA and any other state wage and hour law, including but not limited to claims for unpaid wages and overtime, liquidated damages, waiting time penalties, minimum wage penalties, interest and attorneys' fees, and satisfies any and all claims of Plaintiffs as recited herein.

## ARTICLE VI.

### Releases

Section 6.1:    **PLAINTIFFS' RELEASE OF DEFENDANTS**. In consideration for the gross settlement amount specified in Section 5.1 and other consideration specified herein, the full receipt and sufficiency of which is hereby acknowledged, Plaintiffs, without limitation, hereby irrevocably and unconditionally release and forever discharge Defendants from any and all charges, complaints, claims, causes of action, debts, sums of money, controversies, agreements, promises, damages and liabilities of any kind or nature whatsoever, both at law and equity, known or unknown, suspected or unsuspected, including, without limitation, breach of contract, negligence, unpaid monies owed, claims for overtime wages, penalties, attorneys' fees, or other damages under the FLSA or Louisiana law, or arose out of the transaction or occurrence that is the subject matter of this Litigation.

Plaintiffs agree and acknowledge this release includes any claims that this Agreement was procured by fraud or misrepresentation of any kind.  Plaintiffs also waive any right to become and promise not to consent to become a participant, member or named representative of any class or collective action in any case in which any of the claims waived hereunder are asserted against Defendants and/or any wage and hour claims Plaintiffs made or could have made in the Litigation, and that involve events which have occurred as of the date Plaintiffs sign this Agreement.  If any Plaintiff, without his or her knowledge, is made a member of a class in any such proceeding, the Plaintiff will opt out of the class at the first opportunity afforded to Plaintiff after learning of plaintiff's inclusion.  In this regard, Plaintiffs agree to execute, without objection or delay, an "opt-out" form presented to Plaintiffs either by the court in which such proceeding is pending or by counsel for Defendants.

Section 6.2:    As a condition of settlement, Plaintiffs agree to dismiss their claims in the Litigation with prejudice to the right to refile same or any part thereof, and Plaintiffs also agree to jointly file with Defendants a motion seeking dismissal of the claims in the Litigation upon conclusion of the Claims Submission Period.  This Agreement is expressly conditioned upon full dismissal with prejudice of all of the claims and causes of action alleged in the Litigation, including, without limitation, a dismissal WITH PREJUDICE, of all claims against Orleans Shoring, LLC. In the event the Court refuses or fails to dismiss the entire Litigation with prejudice or fails to approve of the terms of this Agreement, this Agreement shall be null and void.

Section 6.3: The Parties shall bear their respective costs and expenses, including attorneys' fees, incurred in connection with the Litigation, with the exception of money allocated as attorneys' fees/costs as provided herein. Plaintiffs and the Settling Parties agree not to reurge, reinstitute, or refile any of the claims released herein in any court or other legal forum whatsoever.

## ARTICLE VII.

### Warranties and Indemnification

Section 7.1: Plaintiffs hereby represent and warrant that no other person or entity has or has had any interest in the claims, demands, obligations or causes of action referred to in this Agreement, including, without limitation, disability and medical expenses in connection with the FLSA controversy which is the subject of the Litigation; that Plaintiffs have the sole right and exclusive authority to execute this Agreement, and receive all Settlement Funds received herein; and that Plaintiffs have not sold, assigned, transferred, conveyed or otherwise disposed of any of their claims, demands, obligations or causes of action referred to in this Agreement; and they are unaware of any liens, privileges, subrogation, or rights of any workers compensation, private person or government in or to the Settlement Funds which are being paid herein by and on behalf of the Defendants.

Section 7.2: Plaintiffs hereby agree to defend, save and hold harmless, and indemnify Defendants appearing herein, including without limitation, all past, present and future officers, directors, stockholders, attorneys, agents, servants, representatives, employees, subsidiaries, insurers, affiliates, parent companies, managers, partners, heirs, predecessors, privies and successors-in-interest, and assigns, and all other persons and firms or corporations with whom any of the former have been, are now, or may hereafter be affiliated, of and from the full amounts of liens and any and all claims by any person *inter alia* by way of or seeking recovery of claims, indemnity, liens of any kind, subrogation interests, statutory rights, bills or expenses, privileges, or contribution, for damages, attorneys' fees, costs, expenses, and/or losses, known and unknown, against Defendants, that already have been, may now exist, and/or might hereafter arise, in favor of or by any person, including, without limitation, any private or governmental agency, entity, corporation, or attorney seeking a recovery against the Defendants, by, through, in connection with and/or on behalf of Plaintiffs, in connection with any claim in any way arising out of or related to Plaintiffs' claims for overtime wages and/or claims arising out of the transaction or occurrence that is the subject matter of the Litigation.

## ARTICLE VIII.

### FLSA Notice and Claims Process

Section 8.1: Within seven (7) days of the execution of this agreement, the Parties will file with the Court a Joint Motion for Approval of the Agreement and shall appear for hearing if the Court so orders. The Parties will submit to the Court for its review and approval this Agreement and its exhibits. The Parties will jointly request the Court to enter an Order

972771                          Page 7 of 20

approving this Agreement, certifying, for purposes of settlement only, this FLSA Collective Action pursuant to 29 U.S.C. § 216(b), and approving the FLSA Notice and Claim Form to be sent to the potential Opt-in Plaintiffs.

Section 8.2:  Notice of the settlement shall be provided by Plaintiffs' Counsel to the Opt-In Plaintiffs.  After reasonable and diligent investigation, Defendants have provided Plaintiffs' Counsel with a list of all individuals who performed manual labor in the past three (3) years together with their last known address. Within ten (10) days of approval of this Agreement, Plaintiffs' Counsel shall prepare and mail to all potential Opt-in Plaintiffs the FLSA Notice and Claims Form attached to this Agreement via first-class mail, postage prepaid.  The Parties agree that the proposed procedures for notice provide the best practicable notice to the potential Opt-in Plaintiffs.

Section 8.3:  Payment of Opt-In Plaintiffs claims shall be made in accordance with Exhibit B hereto.  The parties recognize and agree that it is the intention of this settlement to pay each Opt-In Plaintiff one and one-half times the amount of any overtime wages due for the three-year period prior to the filing of the Complaint in the Litigation, and Exhibit B reflects the good faith calculations of such settlement amounts made by Defendants based on all records available to them.

Section 8.4:  No Opt-in Plaintiff shall have the right to obtain any payment through this Agreement unless they submit a valid and completed Claim Form within the Claims Submission Period.

Section 8.5:  The FLSA Notice and Claim Form will advise all Opt-in Plaintiffs of the binding nature of the release and shall have the same force and effect as if this Agreement were executed by each Opt-in Plaintiff.  The signature of each Opt-in Plaintiff is not required on the Agreement.

## ARTICLE IX.

### Miscellaneous

Section 9.1:  The Parties agree to diligently take all steps necessary to execute this Agreement and obtain dismissal of the Litigation.  Counsel for all Parties warrant and represent that they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate action required or permitted to be taken by the Parties pursuant to the Agreement to effectuate the terms hereof, and to execute any other documents required.  The Parties and their respective counsel will cooperate with each other and use their best efforts to effect the implementation of the Agreement.

Section 9.2:  This Agreement and compliance with this Agreement shall not be construed as an admission by Defendants of any liability whatsoever, or as admission by Defendants of any violation of the rights of Plaintiffs, violation of any order, law, statute, duty or contract whatsoever.  Defendants specifically disclaim any liability to Plaintiffs for any alleged violation of rights, or for any alleged violation of any order, law, statute, duty or contract on the part of Defendants and or its employees, agents or successors.

Section 9.3:   This Agreement shall be binding upon Defendants, Plaintiffs, as well as upon their heirs, administrators, representatives, executors, divisions, parents, subsidiaries, parents' subsidiaries, affiliates, partners, limited partners, principals, members, employees, attorneys, successors and assigns and shall insure to the benefit of said parties.   Plaintiffs expressly warrant that they have not transferred to any person or entity any rights or causes of action, or claims released by this Agreement.

Section 9.4:   The Parties represent and acknowledge that in executing this Agreement they do not rely and have not relied upon any representation or statement made by any of the Parties or by any of the Parties' agents, attorneys or representatives with regard to the subject matter or effect of this Agreement or otherwise.   This Agreement sets forth the entire agreement between the parties hereto and fully supersedes any and all prior agreements and understandings, written or oral, between the parties hereto pertaining to the subject matter hereof.   Neither the Court nor any reviewing court shall have the authority to modify the terms of the proposed settlement without written consent of the parties through their counsel.   Should any such modification be required by any court, unless the Parties through their counsel consent to such modification in writing, this Agreement shall become null and void.   This Agreement may only be amended or modified by a writing signed by the Parties hereto.   Any waiver of any provision of this Agreement shall not constitute a waiver of any other provision of this Agreement unless expressly so indicated.

Section 9.5:   If, at any time, a violation of any term of this Agreement is asserted by any party hereto, that party shall have the right to seek specific performance of that term and/or any other necessary and proper relief, including but not limited to damages, from any court of competent jurisdiction, and the prevailing party shall be entitled to recover its reasonable costs and attorney's fees.

Section 9.6:   In the event of a dispute as to the interpretation or application of, or an alleged breach of, this Agreement, the Parties agree that such dispute shall be heard in the United States District Court for the Eastern District of Louisiana.   The parties further agree that this Agreement shall be governed by the laws of the State of Louisiana, and where applicable, federal law.

Section 9.7:   Plaintiffs were advised to and did consult with their attorneys before signing this Agreement.   Plaintiffs represent and warrant they are of lawful age; have read the Agreement in its entirety and understand the meaning and application of each of its paragraphs; and are signing of their own free will with the intent of being bound by the Agreement.

Section 9.8:   The Parties believe the terms of the settlement as set forth in this Agreement are a fair, adequate and reasonable settlement of the Litigation and have arrived at this Agreement in arms-length negotiations, taking into account all relevant factors, present and potential.   This Agreement has been drafted jointly by counsel for the Parties.   Accordingly, in any construction or interpretation of this Agreement, the same shall not be construed against any party.

Section 9.9:   If any material provision of this Agreement is held to be illegal, invalid or

unenforceable under present or future laws, or according to the Honorable Carl. J. Barbier, this entire agreement is null and void. The parties agree to dutifully make a good-faith effort to accommodate any objection by the Court so as to effectuate this agreement.

Section 9.10: The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party, nor shall any waiver operate or be construed as a rescission of this Agreement. No repudiate this Agreement or refuse or fail to perform any obligation required hereunder.

Section 9.11: This Agreement may be executed in counterparts, each of which shall be deemed an original, and the counterparts shall together constitute one and the same instrument, notwithstanding that the Parties hereto may not be signatories to the original or the same counterpart. The Parties agree and acknowledge that a photocopy or facsimile copy of an executed signature or initialed page may be used in place of an original executed signature or initialed page for any purpose.

IN WITNESS WHEREOF, the parties hereto have executed this General Release and Settlement Agreement on the dates set forth below.

Dated: 01 -11- 16     By: _WILSON NUNEZ_
                             WILSON NUNEZ

Dated: 11/11/16     By: _Luis Mejia_
                             LUIS MEJIA

Dated: 11/16/16     By: _Jose Enrique Bautisto_
                             JOSE ENRIQUE BAUTISTA

Dated: 11/10/16     By: _Eleuterio Loredo Cuevas_
                             ELEUTERIO LOREDO

Dated: 11/11/16     By: _____
                             SANTOS MARTINEZ

Dated: 11-11-16     By: _Marco Mejia_
                             MARCO MEJIA

Dated: 11/11/16     By: _____
                             AMADEO POLVORILLA

972771                      

Dated: _11-11-16_                    By: _____
                                         LUIS RODRIGUEZ

972771

COSTALES LAW OFFICE

Dated: 11/11/16

By: _____
    ROBERTO LUIS COSTALES
    3801 Canal Street, Suite 207
    New Orleans, LA   70119

*Counsel for Plaintiffs*


FRILOT LLC

Dated: 11/22/16

By: _____
    EVERETT R. FINERAN
    1100 Poydras Street, Suite 3700
    New Orleans, LA   70163

*Counsel for Defendants, Orleans Shoring, LLC,*
*Santicima Trinidad, LLC, La Divina Misericordia, LLC,*
*Antonio Nunez, and Antonio Nunez Reyes*

972771

# **A F F I D A V I T**

STATE OF LOUISIANA

PARISH OF ___Orleans___

      BEFORE ME, the undersigned authority, personally came and appeared:

## **JOSE ENRIQUE BAUTISTA,**

to me personally known to be the person who executed the above and foregoing Release and

Settlement Agreement, who, after being duly sworn according to law, did depose and say that he

executed the foregoing Release and Settlement Agreement of his own free act and deed after

same had been read and explained to him to his satisfaction by his attorney, Roberto Luis

Costales, and that he fully understands the Release and Settlement Agreement.

_JOSE Enrique Bautista_
**Jose Enrique Bautista**

Sworn to and subscribed before me

this 11th day of _November_, 2016.

_____
NOTARY PUBLIC

Print Name: _____
Notary/Bar No. _____



**A F F I D A V I T**

STATE OF LOUISIANA

PARISH OF ___Orleans___

    BEFORE ME, the undersigned authority, personally came and appeared:

**ELEUTERIO LOREDO,**

to me personally known to be the person who executed the above and foregoing Release and

Settlement Agreement, who, after being duly sworn according to law, did depose and say that he

executed the foregoing Release and Settlement Agreement of his own free act and deed after

same had been read and explained to him to his satisfaction by his attorney, Roberto Luis

Costales, and that he fully understands the Release and Settlement Agreement.

 

**Eleuterio Loredo**

Sworn to and subscribed before me

this __10th__ day of __November__, 2016.

NOTARY PUBLIC

Print Name: _Emily Westermeier_
Notary/Bar No. _148021_



972771                              Page **15** of **20**

## **A F F I D A V I T**

STATE OF LOUISIANA

PARISH OF  _Orleans_

      BEFORE ME, the undersigned authority, personally came and appeared:

**SANTOS MARTINEZ,**

to me personally known to be the person who executed the above and foregoing Release and Settlement Agreement, who, after being duly sworn according to law, did depose and say that he executed the foregoing Release and Settlement Agreement of his own free act and deed after same had been read and explained to him to his satisfaction by his attorney, Roberto Luis Costales, and that he fully understands the Release and Settlement Agreement.

_____
Santos Martinez

Sworn to and subscribed before me

this _11th_ day of _November_ , 2016.

_____
NOTARY PUBLIC

Print Name: _____
Notary/Bar No. _____

EMILY A. WESTERMEIER
NOTARY PUBLIC
NOTARY NO. 140021
ORLEANS PARISH, LA

972771                                    Page **16** of **20**

### A F F I D A V I T

STATE OF LOUISIANA

PARISH OF ___Orleans___

BEFORE ME, the undersigned authority, personally came and appeared:

**WILSON NUNEZ,**

to me personally known to be the person who executed the above and foregoing Release and Settlement Agreement, who, after being duly sworn according to law, did depose and say that he executed the foregoing Release and Settlement Agreement of his own free act and deed after same had been read and explained to him to his satisfaction by his attorney, Roberto Luis Costales, and that he fully understands the Release and Settlement Agreement.



**Wilson Nunez**

Sworn to and subscribed before me

this 11th day of November, 2016.



NOTARY PUBLIC

Print Name: _____

Notary/Bar No. _____

972771                     Page **18** of 20

# AFFIDAVIT

STATE OF LOUISIANA

PARISH OF ___Orleans___

BEFORE ME, the undersigned authority, personally came and appeared:

**AMADEO POLVORILLA,**

to me personally known to be the person who executed the above and foregoing Release and Settlement Agreement, who, after being duly sworn according to law, did depose and say that he executed the foregoing Release and Settlement Agreement of his own free act and deed after same had been read and explained to him to his satisfaction by his attorney, Roberto Luis Costales, and that he fully understands the Release and Settlement Agreement.

_____
Amadeo Polvorilla

Sworn to and subscribed before me

this 11th day of November, 2016.

_____
NOTARY PUBLIC

Print Name: _____
Notary/Bar No. _____



972771

**A F F I D A V I T**

STATE OF LOUISIANA

PARISH OF ___Orleans___

  BEFORE ME, the undersigned authority, personally came and appeared:

**LUIS RODRIGUEZ,**

to me personally known to be the person who executed the above and foregoing Release and

Settlement Agreement, who, after being duly sworn according to law, did depose and say that he

executed the foregoing Release and Settlement Agreement of his own free act and deed after

same had been read and explained to him to his satisfaction by his attorney, Roberto Luis

Costales, and that he fully understands the Release and Settlement Agreement.

                _____
                Luis Rodriguez

Sworn to and subscribed before me

this __11th__ day of __November__, 2016.

_____
NOTARY PUBLIC

Print Name: __Emily Westermeir__
Notary/Bar No. __148021__



**A F F I D A V I T**

STATE OF LOUISIANA

PARISH OF _Orleans_

BEFORE ME, the undersigned authority, personally came and appeared:

**LUIS MEJIA,**

to me personally known to be the person who executed the above and foregoing Release and Settlement Agreement, who, after being duly sworn according to law, did depose and say that he executed the foregoing Release and Settlement Agreement of his own free act and deed after same had been read and explained to him to his satisfaction by his attorney, Roberto Luis Costales, and that he fully understands the Release and Settlement Agreement.



_____
**Luis Mejia**

Sworn to and subscribed before me

this 11th day of November, 2016.

_____
NOTARY PUBLIC

Print Name: _____
Notary/Bar No. _____



972771                              Page **19** of **20**

## A F F I D A V I T

STATE OF LOUISIANA

PARISH OF _Orleans_

BEFORE ME, the undersigned authority, personally came and appeared:

**ROBERTO LUIS COSTALES,**

personally known to be the person who executed the above and foregoing Release and Settlement Agreement, who, after being duly sworn according to law, did depose and say that he read and explained the Release and Settlement Agreement to his clients, whom have stated they fully understand the Release and Settlement Agreement.

_____

**ROBERTO LUIS COSTALES**
_Attorney for Plaintiffs_

Sworn to and subscribed before me

this 11 day of November, 2016.

_____
NOTARY PUBLIC
Print Name: Will Beaumont
Notary/Bar No. 90400

972771                          Page **20** of **20**

<u>**EXHIBIT "B"**</u>

1.      <u>**Payment of Settlement Funds to Potential Opt-in Plaintiffs**</u>

      In the event that any of the following persons timely opt into the settlement in accordance with the terms of the General Release and Settlement Agreement, such person shall receive, as Settlement Funds, the following amounts within thirty (30) days after the end of the Claims Submission Period:

| Potential Opt-in Plaintiff: | Total Settlement Payment, Excluding Attorney's Fees: |
| --- | --- |
| 1.  Amadeo Alejandro | $  216.00 |
| 2.  Robert Armstrong | $  319.50 |
| 3.  Angel Bardales | $3,373.50 |
| 4.  Christian Bastida | $  162.00 |
| 5.  William Cruz | $    78.00 |
| 6.  Marvin Dash | $1,242.00 |
| 7.  Antonio Flores | $  130.50 |
| 8.  Gonzalo Galindo | $  306.00 |
| 9.  Wilmev Antonio Lopez Gonzales | $  486.00 |
| 10. Yoshio Ishay | $  594.00 |
| 11. Saul Antonio Martinez | $  241.50 |
| 12. Antonio Nunez | $4,257.75 |
| 13. Jorge Ocampo | $    72.00 |
| 14. Barion Olvison | $    63.00 |
| 15. Wilfredo Ramos | $  165.00 |
| 16. Oscar Sanchez | $  117.00 |
| 17. Nester Torre | $  358.32 |
| 18. Uriel Escoto | $ 3,237.00 |